UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 11-mc-1054 |
| ALL-FEED PROCESSING AND PACKAGING INC., | ) ) ) ) |
| Defendant. | ) |

## O R D E R & O P I N I O N

This matter is before the Court on Plaintiff's Petition for Civil Contempt Order, Magistrate Judge Gorman's Certification of Facts relating to Plaintiff's Petition for Civil Contempt Order, and Defendant's Objection to the Certification of Facts.[1] (Docs. 7, 25, 26). For the reasons stated below, the Court imposes a finding of civil contempt upon Defendant, including a coercive $500/day fine for the 62 days

---

[1] As is discussed further below, on June 28, 2011 Magistrate Judge Gorman issued an Order to Show Cause why Defendant should not be held in contempt. (Docs. 9). Defendant responded in opposition, and Magistrate Judge Gorman held a show cause hearing, at which he imposed a finding of civil contempt on Defendant failure to comply with the Warrant. (8/3/2011 Minute Entry; 8/9/2011 Text Order). Defendant filed an "Objection" pursuant to Federal Rule of Civil Procedure 72(b)(3) to Magistrate Judge Gorman's order, arguing that his factual findings underlying the civil contempt order were contrary to law. (Doc. 21). On October 26, 2011, Magistrate Judge Gorman vacated his finding of contempt, noting that magistrate judges are without power to issue civil contempt orders under 28 U.S.C. § 636. (Doc. 25). Magistrate Judge Gorman instead certified the facts relating to the Petition for Civil Contempt Order for the District Court's consideration, as provided in 28 U.S.C. § 636(e)(6), and it is this Certification of Facts which is now before the Court. (Doc. 25 at 4). The Court relies on the parties' briefs before Magistrate Judge Gorman, as well as the transcript of the show cause hearing he held.

in contempt, and grants Plaintiff attorneys' fees and costs in the amount of $10,964.95.

## BACKGROUND

On May 3, 2011, Plaintiff filed an Application for a Warrant to inspect Defendant's site in order to investigate employees' complaints of hazardous working conditions, including excessive dust and noise, and to monitor Defendant's compliance with a 2010 agreement with Plaintiff to abate certain hazards, after Defendant had refused to allow a voluntary inspection in April 2011. (Doc. 1). Magistrate Judge Gorman issued the Warrant the same day. (Doc. 2). On June 20, 2011, Plaintiff filed a Petition for Civil Contempt Order based on Defendant's alleged interference with Plaintiff's efforts to conduct "personal sampling"[2] of employees' exposure to hazards, as permitted by the May 3, 2011 Warrant, and Magistrate Judge Gorman issued an Order to Show Cause why Defendant should not be held in contempt on June 28, 2011. (Docs. 7-9). Defendant filed a Motion to Dismiss without Prejudice or Stay the Petition for a Civil Contempt Order on July 12, 2011, to which Plaintiff responded on July 29, 2011. (Docs. 12 & 16). Defendant also filed a Response to the Show Cause Order on July 29. (Doc. 17). Magistrate Judge Gorman held a show cause hearing on August 3, 2011, at which the parties presented evidence and arguments. (8/3/2011 Minute Entry; 8/9/2011 Text Order; Doc. 20). On October 26, 2011, Magistrate Judge Gorman tendered a Certification of

---

[2] Personal sampling involves attaching a small sampling unit designed to allow an employee to work as usual to the employee's clothing in order to sample air quality and noise to which the employee is exposed.

2

Facts for the District Judge's determination of whether Defendant's conduct constituted civil contempt. (Doc. 25). These Certified Facts are:

> 1. May 3, 2011, OSHA applied for an inspection warrant of All-Feed, stating that on 2 different occasions in April, All-Feed had refused to allow OSHA inspectors onto the property for an inspection that was authorized under a prior court order.
>
> 2. The warrant for inspection issued on May 3.
>
> 3. The warrant was presented for execution on May 4, and an inspection was initiated on that date.
>
> 4. OSHA sought to complete its inspection, by conducting representative personal samplings as authorized under the warrant.
>
> 5. All-Feed refused to allow the subsequent inspections unless OSHA would agree to limitations on time and other limitations that were not justified under the general terms of the warrant.

(Doc. 25 at 4). Defendant filed an Objection to the Certification of Facts.[3] (Doc. 26).

**LEGAL STANDARD**

In this District, civil Petitions for Warrants filed without a Complaint initiating a new case are automatically referred to a magistrate judge under 28 U.S.C. § 636(b)(3), which provides that "[a] magistrate judge may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." *See Matter of Establishment Inspection of Microcosm*, 951 F.2d 121, 124 (7th Cir. 1991) ("it is well-established that magistrates are authorized to issue OSHA search warrants"). A magistrate judge presented with facts that may justify the imposition of civil contempt may, pursuant to 28 U.S.C. § 636(e)(6), certify those

---

[3] As noted above, Defendant had earlier filed briefs in opposition to Plaintiff's request for a contempt finding and objecting to Magistrate Judge Gorman's now-vacated finding of contempt. (Docs. 12, 17, 21). Defendant's instant Objection to the Certification of Facts incorporates the arguments made in those briefs, and so those arguments that are still relevant are considered here, as well. (Doc. 26 at 1).

facts to the district judge for his consideration. The Court therefore considers the evidence heard by Magistrate Judge Gorman at the show cause hearing on August 3, 2011.

Plaintiff must show by "clear and convincing evidence" that Defendant had significantly violated the order of the Warrant in order to have civil contempt imposed against Defendant. *S.E.C. v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010) (citing *Prima Tek II, LLC v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533, 542 (7th Cir. 2008). In addition, civil contempt can only be found based on a violation of "an unambiguous command." *Hyatt*, 621 F.3d at 692 (citing *Prima Tek II, LLC*, 525 F.3d at 542). Finally, civil contempt orders are either coercive or compensatory: a coercive order of contempt attempts to force the contemnor to obey the original order, in which case the contempt is "purged," while a compensatory order compensates those harmed by the contempt. *F.T.C. v. Trudeau*, 579 F.3d 754, 777 (7th Cir. 2009) (citing *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828-29, (1994); *Bailey v. Roob*, 567 F.3d 930, 933 (7th Cir. 2009).

## DISCUSSION

Defendant raises two arguments opposing the finding of civil contempt: Plaintiff's allegations and some of the Certified Facts relate to pre-warrant conduct, and cannot therefore support a finding of contempt of the Warrant, and the sampling provision in the Warrant was too ambiguous to support a finding of contempt. Defendant further argues that, even if it was in contempt, it purged the contempt by its unconditional offer on July 5, 2011 to allow Plaintiff to complete its

inspections, and even if Defendant were in contempt at some point, the point is now moot as Plaintiff completed its inspections on August 26, 2011.[4]

## I. Finding of Contempt

### A. Conduct underlying finding of contempt

Defendant first argues that the only evidence submitted by Plaintiff to support its Petition for Contempt concerns occurrences prior to the issuance of the Warrant, and so cannot underlie a finding of Contempt based on defiance of the Warrant. (Doc. 21 at 9-11). It also claims that Judge Gorman's fifth Certified Fact similarly relies on pre-Warrant conduct and should not therefore be used by the Court to support a finding of contempt. This argument is unsuccessful.

As Plaintiff points out, Defendant's pre-Warrant conduct merely supported the application for the Warrant itself – the Petition for Contempt was supported by Defendant's post-Warrant limitation of OSHA's sampling to four-hour periods, as well as other evidence. (Doc. 22 at 3). Erin Cropsey, an OSHA Compliance Safety and Health Officer ("CSHO"), submitted a declaration in support of Plaintiff's Petition for Contempt, in which she stated that Defendant thwarted the CSHO's

---

[4] Throughout its briefs, Defendant refers to the fact that it is a struggling small business, and implies that Plaintiff's inspection and enforcement attempts are some form of persecution that it is entitled to resist because of their burden on its business operations. While the Court is sympathetic to the plight of a small business in hard economic conditions, Plaintiff is the federal government agency charged by law with the protection of worker safety, and is required to take the necessary steps to carry out that mission. Hardship is irrelevant to the question of whether Defendant was in contempt, or to the costs Plaintiff incurred because of that contempt, and so the Court does not consider Defendant's hardship arguments in determining whether it was in contempt, nor in determining the proper response for that contempt.

5

May 4 and May 9, 2011 attempts to carry out the sampling authorized by the Warrant by cutting the sampled employees' shifts short on both days the sampling was performed. (Doc. 7, Ex. B at ¶ 11). This resulted in a 4.75 hour sample, which is not sufficient to be representative. Defendant submitted competing affidavits indicating that the sampled employees worked full shifts on May 4 and May 9.[5] (Doc. 21, Exs. 1-3, 5). In issuing his Certified Facts, Magistrate Judge Gorman was entitled to choose between these competing versions of the story, and, having reviewed the affidavits, the Court finds that his choice was a reasonable one.

Even setting this dispute aside, it is undisputed that after the CSHO explained to Defendant's manager that a full-shift sample was needed, Defendant refused to allow any future sampling of more than four hours. (Doc. 7, Ex. B at ¶ 12). It is also undisputed that Defendant's manager told Ms. Cropsey that sampling could not be conducted on the date the CSHO was due to sample because Defendant would not be processing material that day. (Doc. 7, Ex. B at ¶ 11). When the CSHOs came to Defendant's site that day to interview an employee, they were told by that employee that production was running and material was being processed, in contravention of what Defendant had told Ms. Cropsey. (Doc. 7, Ex. B at ¶ 13). The CSHOs also asked Defendant to allow them to view an area of the building as part

---

[5] Defendant also argues in the "Background" section of its brief that Plaintiff's monitoring in May 2011 was sufficient, as Plaintiff managed to find "exceedances" of the allowable level of dust during that monitoring. Though, as Defendant points out, "an exceedance is an exceedance," Plaintiff explains that while the "exceedance" may have been sufficient to find a violation, the completion of full monitoring was necessary to determine feasible remedial measures. (Doc. 20 at 6). Moreover, even if hindsight had shown that further monitoring was unnecessary, Defendant could not have known this at the time that it contemptuously refused full compliance with the Warrant; this would not excuse the contempt.

of their inspection, but Defendant would not allow them to enter. (Doc. 7, Ex. B at ¶ 13).[6] These facts, which were submitted in support of Plaintiff's Petition for Contempt, constitute ample evidence to support Judge Gorman's certification that, after the issuance of the Warrant, All-Feed refused to allow the subsequent inspections unless OSHA would agree to limitations on time and other limitations that were not justified under the general terms of the warrant, and thus support a finding of contempt based solely on post-Warrant conduct. They constitute clear and convincing evidence of a deliberate attempt to evade the Warrant's requirements by Defendant.

### B. Ambiguity of the Warrant's sampling provision

Defendant also argues that the Warrant's sampling provision was too ambiguous to support a contempt finding. (Doc. 21 at 11-12). Civil contempt can only be found based on a violation of "an unambiguous command." *Hyatt*, 621 F.3d at 692 (citing *Prima Tek II, LLC*, 525 F.3d at 542). Defendant states that the provision "is ambiguous as to the type of monitoring (e.g., for respirable dust, total dust, noise, etc.), the number of employees to be monitored, the locations were monitoring could be performed, the duration and type of monitoring, etc." (Doc. 21 at 12). Defendant's argument is that it is not clear that the monitoring it allowed Plaintiff to do on May 4 and 9 was insufficient to comply with the Warrant, as the

---

[6] Moreover, employees told Plaintiff in depositions previous to the warrant that Defendant had instructed them to alter their work behavior so as to limit the dust produced, and made them reluctant to speak with Plaintiff's representatives. (Doc. 7, Ex. B at ¶ 11). Though these employee depositions relate to pre-Warrant conduct by Defendant and thus do not establish contempt as to the Warrant, they are illustrative of the impediments to OSHA's inspection process that Defendant has been willing create.

7

Warrant does not specifically require the length of monitoring sought by Plaintiff. Plaintiff counters that the Warrant was clear enough, citing to legal authority that a Warrant for an OSHA inspection need not lay out in precise detail the way the inspection was to be conducted, so long as it has described the nature of the hazardous condition to be investigated. (Doc. 22 at 5-7).

The Warrant was unambiguous enough to support a finding of contempt. In a similar case from the Fifth Circuit, OSHA obtained a warrant providing that its inspectors "shall also be permitted…to affix sampling or testing equipment to the persons of employees, if necessary." *Martin v. Trinity Industries, Inc.*, 959 F.2d 45 (5th Cir. 1992). The employer discouraged its employees from agreeing to wear the devices, and after being found in contempt, argued that the warrant was too vague in its requirement that inspectors "be permitted" to put equipment on employees to support a contempt finding. *Id.* at 47. Even though the employer did technically "permit" the employees to wear the equipment, the court found that the warrant was not too vague to support a contempt finding for the employer's conduct discouraging employees from wearing it, distinguishing two other cases, *International Longshoremen's Association, Local 1291 v. Philadelphia Marine Trade Association.*, 389 U.S. 64 (1967) and *Baddock v. Villard*, 606 F.2d 592 (5th Cir. 1979). *Id.* The *Martin* court noted that in *International Longshoremen's Association*, the order at issue "contained only an abstract conclusion of law, not an operative command," and in *Baddock*, "an order vacating a notice of deposition…neither specifically directed that the deposition not take place (as it might have done under the discovery rules), nor specifically addressed itself to the attorney held in

8

contempt," so the attorney could not be held in contempt for taking the deposition. *Id.* (citing *International Longshoremen's Ass'n*, 389 U.S. at 74; *Baddock*, 606 F.2d at 593).

Likewise, here the requirement that Defendant allow inspection of particular areas of its plant, including the attachment of personal sampling devices to employees, was not too vague to support a finding of contempt for Defendant's hindrance of Plaintiff's attempts to execute the Warrant, by cutting short the sampled employees' shifts on both days the sampling was performed, by refusing to allow any future sampling of more than four hours, by misrepresenting the plant's production schedule to the CSHO, and by refusing to allow the CSHOs to enter the plant to view a certain area of it as provided in the Warrant, even though Defendant did allow a limited amount of personal sampling. As did the employer in *Martin*, Defendant may have "technically" complied with a limited reading of the terms of the Warrant, but, like the *Martin* court, this Court finds that the Warrant was not too vague to support a finding of contempt for failure to give full compliance.

C. **Finding of Contempt**

The Court thus finds that Defendant was in contempt beginning May 4, 2011 when it refused to give full compliance to the Warrant issued by Magistrate Judge Gorman on May 3, 2011. The Court finds that the $500/day fine imposed by Magistrate Judge Gorman, purgeable upon compliance with the Warrant's terms, is an appropriate coercive sanction. The Court also finds that the award of attorneys'

fees, costs, and interest associated with the prosecution of Plaintiff's contempt petition is appropriate.

## II. Contempt sanction and purgation of contempt

### A. July 5, 2011 offer to allow further inspections

Civil contempt orders must either be coercive or compensatory: a coercive order of contempt attempts to force the contemnor to obey the original order, in which case the contempt is "purged," while a compensatory order compensates those harmed by the contempt. *F.T.C. v. Trudeau*, 579 F.3d 754, 777 (7th Cir. 2009) (citing *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828-29, (1994); *Bailey v. Roob*, 567 F.3d 930, 933 (7th Cir. 2009). The fine imposed by Magistrate Judge Gorman was coercive, and intended to induce Defendant's compliance with the Warrant. "[A]n essential ingredient to any coercive contempt sanction is the opportunity to purge," meaning that the contemnor may "free himself of the sanction 'by committing an affirmative act,' namely complying with the court's order." *Id.* (citing *Bagwell*, 512 U.S. at 828-29).

Defendant argues that, even if the finding of contempt was appropriate, it purged the contempt "by extending numerous unconditional offers to allow OSHA to conduct uninhibited monitoring" beginning on July 5, 2011. (Doc. 21 at 13; Doc. 26 at2). It relies primarily on its letter to Plaintiff's attorney indicating that Defendant was willing to proceed with additional monitoring, review Defendant's production and employee work schedules with Plaintiff, allow Plaintiff to conduct monitoring for as long as necessary, and involve Defendant's attorney's "OSHA group" to "increase All-Feed's accountability over the monitoring process." (Doc. 12, Ex. 1).

However, Plaintiff's counsel stated at the hearing,[7] and again in Plaintiff's brief, that she understood Defendant's offer to in fact be conditioned on Plaintiff's withdrawal of the petition for contempt. (Doc. 20 at 4, 11; Doc. 22 at 7). Magistrate Judge Gorman felt that, given the circumstances, an offer alone was insufficient, and that Defendant had not purged merely by offering to allow Plaintiff to finish its inspections.

The Court's initial inclination is to agree with Magistrate Judge Gorman, as Plaintiff was not actually finished with its inspections until after the contempt order was issued, showing perhaps that Defendant was only willing to comply when the Court created a coercive sanction against non-compliance, but Defendant has proffered uncontroverted evidence that undermines this view of the matter. Defendant's Objection to the initial order of contempt includes copies of emails between Defendant's and Plaintiff's counsel discussing whether Plaintiff would consent to an extension of time for Defendant to respond to Magistrate Judge Gorman's show cause order. (Doc. 21, Ex. 7). These emails show that Plaintiff's counsel unequivocally refused to proceed with inspections until *after* the Court had ruled on the petition for contempt; it thus was Plaintiff who created the delay between July 5 and August 26, not Defendant.[8] Given this evidence, the Court finds

---

[7] The transcript of the hearing indicates that Mr. Burmeister, Defendant's counsel, made the statements transcribed on pages four through twelve, but a look to Magistrate Judge Gorman's statements immediately before and after shows that this is an error, and that Ms. Hockley-Cann, Plaintiff's counsel, was actually the speaker whose words are transcribed on those pages. (Doc. 20 at 3, 12).

[8] There is no indication that Defendant required Plaintiff to withdraw its Petition in order to allow the inspection, either in the email exchange or in the July 5 letter. (Doc. 21, Ex. 7). Moreover, there is no indication that Plaintiff's counsel sought to negotiate on this issue, in order to complete the inspections without

that it would be inequitable to charge Defendant the $500/day fine for the period after July 5, since Plaintiff actually prevented Defendant's compliance after that date.

> B. **Whether contempt is moot because Plaintiff has completed its inspection**

Finally, Defendant asserts in its latest filing that, even if it was in contempt, it is no longer in contempt because Plaintiff has completed its inspection satisfactorily, and that the issue is thus moot. (Doc. 26 at 2). As discussed above, the Court now holds that Defendant was in contempt between May 4, 2011 and July 5, 2011. This finding of past contemptuous behavior is not moot. While it is true that finding no longer appears necessary to coerce Defendant's compliance with the Warrant, it is also apparent that Defendant was unwilling to comply until threatened with a finding of contempt. Plaintiffs attempting to enforce court orders should not be required to file petitions for contempt in order to induce compliance with those orders; for Defendant to have stalled until that step was taken simply increases delays and costs, both for the parties and for the Court, without providing any legitimate benefit to any party. It was the threat of accruing a daily fine that finally motivated Defendant to act. Even allowing for Defendant to file a Response

---

withdrawing the Petition. The Court's finding on this question would probably be different if Plaintiff had been willing to discuss continuing with the inspection while the Court considered the Petition for Contempt. Plaintiff instead appears to have been concerned that the Court would consider the contempt issue moot if it completed its inspections prior to the Court's decision, and thus seems to have prioritized obtaining a contempt finding over the actual completion of the inspections. Though Plaintiff should not be required to withdraw its Petition in order to be allowed to complete its inspections, Plaintiff's primary concern should have been to get the inspections completed, and therefore should have at least attempted to negotiate a quicker inspection schedule.

to the Petition within the usual time frame, the Court could have ruled on the Petition for Contempt on July 5, 2011, and would have found Defendant to be in contempt; Defendant should not be able to claim mootness merely because of a delay in the Court's disposition of the Petition.

As noted above, a coercive contempt sanction, such as this one, must be "purgeable" – that is, the contemnor must be able "to free himself of the sanction 'by committing an affirmative act,' namely complying with the court's order." *Trudeau*, 579 F.3d at 777. However, the Court has not been able to determine from precedential cases whether "purgation" merely cuts off the accrual of a per diem fine, or wipes it out altogether, as though there had been no contempt.[9] If Defendant is liable for 62 days of contempt at $500/day, it faces a fine of $31,000. The classic contempt sanction is imprisonment, and is "purgeable" if the contemnor is able to free himself by compliance. It is clear that, though the imprisoned contemnor is released from jail, he did not escape the consequences of his contempt. He has already "paid," and cannot be given back his days lost in jail; compliance merely ends his jail time. There is no reason to suppose that the imposition of a fine should be treated differently in order to be considered "purgeable." Compliance merely cuts off the imposition of the coercive sanction, whether it be a per diem fine or jail time.

Therefore, the best reading of "purgeable" appears to imply that Defendant must pay the fine for the period between May 4, 2011, when it first refused to

---

[9] Defendant appears to assume that compliance merely cuts off the accrual of the fine, as it argues for a limitation of the fine and fees "to the date All-Feed purged on July 5, 2011." (Doc. 26 at 2).

comply with the Warrant, and July 5, 2011, when it finally offered to allow Plaintiff to complete its inspections pursuant to the Warrant.

## III. Attorney's Fees

Magistrate Judge Gorman originally imposed a requirement that Defendant pay Plaintiff's attorneys' fees, costs, and interest associated with bringing the action for contempt. As noted above, this Court agrees that this is an appropriate sanction. However, Defendant attempts to limit its liability for Plaintiff's attorneys' fees, costs, and interest, both by arguing for purgation of the fees, and by arguing against Plaintiff's particular claim for fees.

Defendant asserts that its liability for attorneys' fees should be "purged" or cut off as of the date of its compliance with the Warrant to Plaintiff. However, it is well-established that, independent of a coercive or compensatory contempt sanction, a court may require the contemnor to pay attorneys' fees. *Tranzact Technologies, Inc. v. 1Source Worldsite*, 406 F.3d 851, 855 (7th Cir. 2005) (citing *CFTC v. Premex, Inc.*, 655 F.2d 779, 785 (7th Cir. 1981)); *Matter of Establishment Inspection of Microcosm*, 951 F.2d. at 126) (citing *Squillacote v. Local 248, Meat & Allied Food Workers*, 534 F.2d 735, 748 (7th Cir. 1976)). An award of attorneys' fees is intended to compensate the complainant for the costs it incurred in attempting to get the contemnor to comply with the court's order, and is therefore not purgeable. Under Magistrate Judge Gorman's original order, and under this Court's instant order, Plaintiff can recover any reasonable attorneys' fees, costs, and interest incurred in prosecuting the contempt petition and obtaining Defendant's compliance with the Warrant.

14

Related to this argument is Defendant's claim that it should not be liable for any fees incurred after September 1, 2011, because those fees related to Defendant's Objections to Magistrate Judge Gorman's original order, and were no longer necessary to obtain Defendant's compliance with the Warrant. The Court does not agree. While Defendant had complied with the Warrant by September 1, 2011, Plaintiff was still entitled to argue that Magistrate Judge Gorman's ruling in its favor was appropriate, in order to preserve the rights it had obtained under the initial contempt order. It would have been unreasonable for Plaintiff to give up those rights.[10] It was *Defendant's* Objections that necessitated a response from Plaintiff; Plaintiff was not initiating further filings in order to drive up fees, but merely responding to an attack on the Order. The Court finds that Plaintiff's Response to the Objections was a reasonably necessary attempt to preserve rights Plaintiff obtained under the initial order of contempt by Magistrate Judge Gorman.

Defendant also argues that some of Plaintiff's claimed fees are not related to the prosecution of the contempt petition, claiming that Plaintiff's fee petition lacks sufficient detail to ensure that all of the claimed hours were actually spent on contempt petition-related work.[11] On the contrary, Plaintiff's petition clearly states, under penalty of perjury, what work was included in the calculation: the preparation of the contempt petition and related documents, the preparation of a

---

[10] The Court notes that often, if a party's objections or other arguments before the Court go unrebutted, the Court will consider them uncontested. Plaintiff was not required to risk this outcome.

[11] Defendant does not appear to take issue with Plaintiff's calculation of counsel's hourly rate of $172.85, which appears to be somewhat lower than typical market rates.

response to Defendant's Motion to Dismiss or Stay the contempt petition, counsel's appearance at the contempt hearing before Magistrate Judge Gorman, and the preparation of Plaintiff's response to Defendant's Objections to Magistrate Judge Gorman's initial order of contempt. (Doc. 23, Ex. 1 at 1). Plaintiff does not indicate or give any reason to believe that any work other than that related to the contempt proceedings was included; indeed, Plaintiff does not appear to claim any time not directly devoted to preparing briefs and appearing in Court. The Court cannot reasonably expect more than counsel's sworn assurance that the claimed work was limited to contempt petition-related matters, and her specific indication of which tasks she included. Even if counsel were to provide more detail (including, perhaps, breakdowns of how much time was spent researching, or drafting, or editing the briefs), the Court would still have to rely on her sworn assurance that the fee petition was accurate. Moreover, the claimed hours are reasonable for the work accomplished: 61.5 hours for three sets of substantive filings and an appearance before Magistrate Judge Gorman (involving travel from Chicago to Peoria and back). (Doc. 23, Ex. 1 at 2). This fact lends further support to the conclusion that the hours claimed are appropriately related to the contempt petition.

Therefore, the Court will grant Plaintiff's request for fees and costs in the amount of $10,964.95.

## Conclusion

For the reasons stated above, the Court finds that Defendant was in contempt of the Court's May 3, 2011 Warrant beginning May 4, 2011, and imposes a coercive $500/day fine until Defendant complies with the Warrant; Defendant also

must pay Plaintiff's attorney's fees and costs associated with its Petition for Contempt. The Court also finds that Defendant purged the contempt on July 5, 2011. Defendant is thus liable for $31,000 in coercive fines for the contempt, and $10,964.95 in Plaintiff's fees and costs associated with the Petition for Contempt.

IT IS SO ORDERED.

Entered this <u>24th</u> day of March, 2012.

                                            s/ Joe B. McDade
                                           JOE BILLY McDADE
                                    United States Senior District Judge